FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 10, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NATHAN B. NAVE,<br><br>Petitioner,<br><br>v.<br><br>MELISSA ANDREWJESKI,<br><br>Respondent. | NO. 2:22-CV-0186-TOR<br><br>ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS |

BEFORE THE COURT is Petitioner Nathan B. Nave's Petition for Writ of Habeas Corpus. ECF No. 1. Petitioner, a prisoner at Coyote Ridge Corrections Center, is proceeding *pro se*. Respondent is represented by Assistant Attorney General John J. Samson. Respondent has answered the Petition and filed relevant portions of the state court record. ECF Nos. 7, 8. Petitioner filed a Traverse to Respondent's Answer. ECF No. 16. Petitioner also filed a Motion to Strike and a Motion for Summary Judgment. ECF Nos. 14, 15. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Nathan B. Nave's Petition for Writ of Habeas Corpus (ECF No. 1) is **DENIED**.

ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS ~ 1

Petitioner's Motion to Strike and Motion for Summary Judgment (ECF Nos. 14

and 15) are denied as moot.

## BACKGROUND

On August 9, 2022, Petitioner filed a Petition for Writ of Habeas Corpus.

ECF No. 1.  Mr. Nave is challenging his Spokane County Superior Court jury

convictions for second degree rape (count 1), rape of a child in the third degree

(count 2), and child molestation in the third degree (count 3).  ECF Nos. 8-1 at 2-3.

The underlying facts and procedural history, summarized by the Washington Court

of Appeals on direct appeal, are as follows:

> Danielle Valentine gave birth to I.V. in 2002. Ms. Valentine
> began dating Nathan Nave when I.V. was 5. The two had twin girls
> and eventually married. The family lived in a two-level house. I.V.'s
> bedroom was downstairs next to a living room and the other bedrooms
> were upstairs.
>
> Once when I.V. was 11, she and Mr. Nave were watching a
> movie. I.V. fell asleep and, when she awoke, Mr. Nave was touching
> her under her shorts on her upper thigh. At the time, I.V. thought he
> was just massaging her legs, but was alarmed because the touching
> was so far up on her leg.
>
> About two years later, I.V. fell asleep watching a movie in the
> living room on the opposite side of a couch from Mr. Nave. When she
> awoke, Mr. Nave was touching her vagina, but above her underwear.
> I.V. tried to go to her room, but Mr. Nave insisted she stay. He pulled
> her arm, but she pulled away and went to her bedroom. She did not
> disclose this incident to her mother, but she stopped watching movies
> with Mr. Nave.
>
> The next incident occurred in early 2017. I.V. was asleep in her
> bedroom, facing the wall, and was awakened by someone touching

her. The person, whom I.V. later testified as Mr. Nave, massaged her legs, rubbed her back, and touched her vagina. This occurred for 15 to 20 minutes, and I.V. was terrified. The person penetrated I.V.'s vagina digitally. Again, I.V. did not disclose this to her mother.

After that incident, the sexual abuse continued three or four times per week. Each time, I.V. faced the wall and often covered her head with a blanket because she did not want Mr. Nave to know she was awake. I.V. never saw the person who repeatedly abused her during this time nor did the person ever speak to her during the abuse.

In the midst of this abuse, Mr. Nave once acknowledged he had come into her room the prior night. While driving I.V. to school, Mr. Nave said, "[A]bout last night, one of three things could happen. One, you don't tell anyone and I keep doing it; two, you don't tell anyone and I stop; three, you feel like you have to tell someone." Report of Proceedings (RP) at 63. I.V. told him she would not tell anyone and for him to stop. Mr. Nave explained that if she told someone, the family would lose their home. Despite I.V.'s request that he stop, Mr. Nave continued sexually abusing I.V.

On May 12, 2017, I.V. told her mother that Mr. Nave had raped her. Her mother confronted Mr. Nave and told him to leave the house and go to his mother's house because she needed to figure things out. Mr. Nave then went to his mother's house. Mr. Nave quit his job, sold his car, and traveled to New York the following day.

On May 31, 2017, the State charged Mr. Nave with one count of rape in the second degree, one count of rape of a child in the third degree, and one count of child molestation in the third degree. The charges included a special allegation of aggravating circumstances for each count, alleging that the offense was part of an ongoing pattern of abuse of the same victim under 18 years old. Federal marshals later served an arrest warrant on Mr. Nave in Idaho Falls, Idaho, where he had been staying with his cousin.

Pretrial motions

Prior to trial, the State filed a motion to allow evidence that Mr. Nave had touched I.V. when she was 11 and 13. The State argued the

evidence was needed to prove the charged aggravator. Mr. Nave argued the prior acts were not criminal and nothing happened since the 2013 incident, thus making the acts irrelevant. The trial court granted the State's motion, ruling the evidence could be admitted under ER 404(b) for the purpose of showing lack of accident, mistake, or intent, and to show an ongoing pattern of abuse.

The State also filed a motion to exclude evidence that I.V.'s cousin had been sexually abused by a family member. Mr. Nave responded that I.V.'s mother "knows, [that I.V.] knew of the allegations [yet she] was somewhat equivocal [about] the timing, but fully admitted that it could have been as earl[y] as a month before [I.V.] made her . . . disclosures." RP at 21 (emphasis added). Mr. Nave argued the evidence was important to explain to the jury why I.V. would disclose contrived accusations in May 2017. The State responded that Mr. Nave had no basis to say the cousin's allegations were similar and that Mr. Nave had not made a sufficient offer of proof. The trial court determined that Mr. Nave's offer of proof was too nebulous. The court added that it would reconsider its ruling if Mr. Nave could establish the necessary link between I.V.'s and her cousin's allegations outside the presence of the jury before cross-examining I.V.

Mr. Nave filed a motion to exclude evidence he went to New York after being confronted by Ms. Valentine. He also sought to exclude evidence he attempted to commit suicide. The trial court granted the motion in part, excluding evidence of his suicide attempt, but reserving its ruling on evidence of flight.

Trial testimony of Mr. Nave

The State presented its evidence to the jury. Mr. Nave elected to testify in his own defense. He denied ever touching I.V. inappropriately. He also testified that after being released on bond in Idaho, he returned to Washington as quickly as he could and presented himself to the court.

During cross-examination, the State began asking questions that Mr. Nave objected to as beyond the scope of Mr. Nave's direct

testimony. The trial court excused the jury and heard arguments from both sides.

The State argued it was allowed to broadly question Mr. Nave based on his general denial that he had ever sexually abused I.V. The trial court agreed. Mr. Nave added that if the State questioned him about traveling to New York, he would object. The State argued it was entitled to question Mr. Nave about traveling to New York to counter his testimony that he quickly presented himself to the court. The trial court agreed.

The jury returned, and the State inquired into these areas. Mr. Nave confirmed he went to his mother's house after he was told to leave his house. He also confirmed he had two young biological daughters who continued to live in the house, was a father figure to I.V., yet quit going to work, placed his car for sale, and the next day traveled to New York.

Verdict and sentencing

The jury found Mr. Nave guilty of all three counts and answered yes to the special verdicts for the pattern of abuse aggravator charged on each count. The court sentenced Mr. Nave to 194 months to life confinement.

ECF No. 8-1 at 25–29 (Ex. 2) (footnote omitted).

The Washington Court of Appeals affirmed Petitioner's convictions for second degree rape, rape of a child in the third degree, and child molestation in the third degree. *Id*. at 47.

Petitioner filed a petition for review in the Washington Supreme Court. ECF No. 8-1 at Ex. 11. On February 3, 2021, the Supreme Court denied review without comment. *Id*. at Ex. 12.

In January 2022, Petitioner filed a personal restraint petition in the Washington Court of Appeals. *Id*. at Ex. 14. Petitioner also filed a motion in the Superior Court, which was transferred to the Court of Appeals. *Id*. at Ex. 15. These matters were consolidated and relief was denied. *Id*. at Ex. 18.

Petitioner then sought review by the Washington Supreme Court. *Id*. at Ex. 19. The Supreme Court denied review. *Id*. at Ex. 21. Petitioner moved to modify the ruling, which was also denied. *Id*. at Ex. 22 and Ex. 23. A certificate of finality was issued on July 19, 2022. *Id*. at Ex. 24.

Petitioner previously filed a federal 28 U.S.C. § 2254 habeas petition in this Court. Case number 2:19-CV-0155-TOR, U.S.D.C. E.D. of WA. That case was dismissed for various reasons including failure to exhaust. This present habeas petition is not considered a "second or successive" petition because the first was dismissed for lack of exhaustion. See *Slack v. McDaniel*, 529 U.S. 473, 478, 487 (2000) (declining to apply § 2244(b) to a second application where the District Court dismissed the first application for lack of exhaustion).

Petitioner filed this federal 28 U.S.C. § 2254 habeas petition (ECF No. 1) on August 9, 2022, alleging eleven grounds for relief:

> 1. The Petitioner's conviction is based on knowingly false evidence in violation of the U.S. Constitution's 14th Amendment.
>
> 2. The Petitioner's conviction is based on insufficient evidence in violation of the U.S. Constitution's 14th Amendment.

3. The Petitioner was denied his constitutional right to a fair trial when the trial court abused its discretion by allowing "flight" evidence.

4. The Petitioner was denied his constitutional right to a fair trial when the trial court abused its discretion by allowing "prior bad acts".

5. The Petitioner was denied his constitutional right to present a defense when the trial court excluded crucial evidence to that defense.

6. The Petitioner was denied his right to a fair trial when cross-examination of the Petitioner was allowed to go beyond the limited scope of the direct examination.

7. The court of appeals applied new, irrelevant and unconstitutional evidence on appeal to affirm conviction in violation of the Petitioner's U.S. Constitutional Fourteenth Amendment rights.

8. The Petitioner's defense counsel provided ineffective assistance during trial resulting in a violation of the Petitioner's U.S. Constitutional right.

9. The Petitioner was denied his constitutional guaranteed Fourth, Fifth, Sixth, and Fourteenth Amendment rights by Washington state's practices of charging by information supported only by a declaration describing probable cause.

10. The Petitioner alleged multiple *Brady* violations.

11. Cumulative error denied the Petitioner a fair trial.

ECF No. 1 at 5-10 and 18-22; ECF No. 16 at 4-5.

Respondent concedes that Petitioner has exhausted his state remedies on claims 1, 2, 3, 5, 8, 9, and 10 pursuant to 28 U.S.C. § 2254(b).  ECF No. 7 at 11. However, Petitioner has not properly exhausted claims numbered 4, 6, 7, and 11.

# DISCUSSION

A court will not grant a petition for a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court proceedings unless the petitioner can show that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Section 2254(d) sets forth a "highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citation omitted).

## I.    No Evidentiary Hearing Required

Petitioner seeks an evidentiary hearing to review evidentiary claims. ECF No. 16 at 6-13. 28 U.S.C. § 2254, requires the Court to consider the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). As to factual determinations, the Supreme Court has instructed that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). This means that evidence not presented to the state court may not be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if the underlying

factual determinations of the state court were reasonable. *See Murray v. Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014) ("After *Pinholster*, a federal habeas court may consider new evidence only on *de novo* review, subject to the limitations of § 2254(e)(2)."). Two separate statutory subsections govern a federal court's review of state court factual findings:

> Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).

*Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citation omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007). Importantly, a "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. at 473.

Accordingly, this Court finds no evidentiary hearing is required in light of the evidence presented in the state court proceeding and the relevant and material facts upon which this Court relies.

## II.    Standard of Review

A rule is "clearly established Federal law" within the meaning of section 2254(d) only if it is based on "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Howes v. Fields*, 565 U.S. 499, 505 (2012)).  A state court's decision is contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Early v. Packer*, 537 U.S. 3, 8 (2002) (internal quotation marks omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).  The state court need not cite to the controlling Supreme Court precedent, nor need it even be aware of the relevant case law, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.*  "[A]n unreasonable application of" clearly established federal law is one that is "objectively unreasonable, not merely wrong; even clear error will not suffice." *White*, 572 U.S. at 419 (internal quotation marks and citation omitted).  Of utmost importance, circuit precedent may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (per curiam).

1    In order to obtain a writ of habeas corpus, "a state prisoner must show that

2 the state court's ruling on the claim being presented in federal court was so lacking

3 in justification that there was an error well understood and comprehended in

4 existing law beyond any possibility for fairminded disagreement." *White*, 572 U.S.

5 at 419-20 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Under the

6 harmless error standard of review adopted by the Supreme Court, even if a

7 reviewing court finds constitutional error, the challenged error must have caused

8 "actual prejudice" or had "substantial and injurious effect or influence" in

9 determining the jury's verdict in order for the court to grant habeas relief. *Brecht*

10 *v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted).

> 11    If [the section 2254(d)] standard is difficult to meet, that is because it
> 12    was meant to be …. It preserves authority to issue the writ in cases
>       where there is no possibility fairminded jurists could disagree that the
>       state court's decision conflicts with [the Supreme] Court's precedents.
> 13    It goes no further. Section 2254(d) reflects the view that habeas
>       corpus is a "guard against extreme malfunctions in the state criminal
> 14    justice systems," not a substitute for ordinary error correction through
>       appeal. As a condition for obtaining habeas corpus from a federal
> 15    court, a state prisoner must show that the state court's ruling on the
>       claim being presented in federal court was so lacking in justification
> 16    that there was an error well understood and comprehended in existing
>       law beyond any possibility for fairminded disagreement.

17

18 *Harrington*, 562 U.S. at 102–03 (citations omitted).

19    The petitioner bears the burden of showing that the state court decision is

20 contrary to, or an unreasonable application of, clearly established precedent. *See*

1   *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011).  In conducting its habeas

2   review, a federal court looks "to the last reasoned decision of the state court as the

3   basis of the state court's judgment."  *Merolillo v. Yates*, 663 F.3d 444, 453 (9th

4   Cir. 2011) (citation omitted).  A rebuttable presumption exists: "Where there has

5   been one reasoned state judgment rejecting a federal claim, later unexplained

6   orders upholding that judgment or rejecting the same claim rest upon the same

7   ground."  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

8        The federal courts are not to grant a writ of habeas corpus brought by a

9   person in state custody pursuant to a state court judgment unless "the applicant has

10  exhausted the remedies available in the courts of the State."  *Wooten v. Kirkland*,

11  540 F.3d 1019, 1023 (9th Cir. 2008), citing 28 U.S.C. § 2254(b)(1)(A).  This

12  exhaustion requirement is "grounded in principles of comity" as it gives states "the

13  first opportunity to address and correct alleged violations of state prisoner's federal

14  rights."  *Wooten*, 540 F.3d at 1023, citing *Coleman v. Thompson*, 501 U.S. 722,

15  731 (1991).

16       A claim must be "fully and fairly" presented to the state's highest court so as

17  to give the state courts a fair opportunity to apply federal law to the facts.

18  *Anderson v. Harless*, 459 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270, 276-78

19  (1971).  Each claim must be presented to the state's highest court based upon the

20

1    same federal legal theory and the same factual basis as the claim is subsequently

2    asserted in federal court.  *Hudson v. Rushen*, 686 F.2d 826, 829-30 (9th Cir. 1982).

3    **III.    Discussion**

4        **Claim 1:  Alleged False Evidence**

5        Petitioner contends that the victim was testifying from events she believed to

6    be real based on a conversation between her and the Petitioner.  ECF No. 1 at 5.

7    Petitioner contends that she was not testifying from her own memory and thus,

8    Petitioner's conviction is based on "false evidence."  *Id*.

9        The Washington Court of Appeals rejected the false evidence claim in the

10   personal restraint petition proceedings.  ECF No. 8-1, Ex. 18 at 387-88.  The state

11   court noted, Petitioner "argues that the State violated his due process rights by

12   obtaining a conviction on evidence the State knew was false or misleading and by

13   failing to correct the record when Mr. Nave's step-child did not affirm events from

14   memory but only from an uncorroborated admission."  *Id*., Ex. 18 at 387.  The

15   state court determined that "Nave fails to produce evidence to support his

16   speculative claims . . . that the State knowingly presented false or misleading

17   evidence and failed to correct the record concerning that evidence."  *Id*., Ex. 18 at

18   387-88.  The court found that Nave's "contentions are based on merely conclusory

19   allegations that an investigation did not occur and that he made no admission to his

20   step-child."  *Id*., Ex. 18 at 388.

1      Denying review, the Washington Supreme Court agreed that Nave failed to

2   prove the prosecution knowingly presented false testimony.  The court held:

3           Mr. Nave also argues that the prosecutor knowingly presented false
    testimony from the victim. But he does not show that to be the case. The
4   testimony he quotes concerns the victim's initial uncertainty about whether
    what she reported had actually happened or was a dream, which was later
5   clarified when she recounted a conversation with Nave while he was driving
    her to school in which he admitted to what he was doing and talked about
6   the consequences of disclosing it. Mr. Nave demonstrates no knowing
    presentation of false testimony.

7

8   ECF No. 8-1, Ex. 21 at 504.

9      Nave does not show the prosecution presented false evidence.  More

10  importantly, Nave does not show the state court adjudication of the claim was

11  contrary to or an unreasonable application of clearly established federal law.  This

12  allegation is denied.

13  **Claim 2:  Alleged Insufficient Evidence**

14     Petitioner contends that the victim never observed Petitioner committing the

15  crimes.  ECF No. 1 at 7.  Petitioner explains that the victim believed Petitioner

16  committed the crimes because he admitted doing so.  *Id*.  Thus, he contends that

17  the identity of the criminal is unproven.  *Id*.

18     In reviewing a claim of insufficient evidence, "the relevant question is

19  whether . . . any rational trier of fact could have found the essential elements of the

20  crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)

(emphasis in original).  An applicant is entitled to relief only "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  *Id.* at 324.  In addition to the deferential view of the evidence required under *Jackson*, the habeas statute requires a high level of deference in reviewing the state court's adjudication of the claim.  *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) ("We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.").  The habeas statute therefore imposes a "twice-deferential standard" of reviewing the claim.  *Parker v. Matthews*, 567 U.S. 37, 43 (2012).

The Washington Court of Appeals reasonably determined that the evidence, when viewed in the light most favorable to the prosecution, sufficiently proved that Nave committed the crime.  Rejecting the claim on direct appeal, the Washington Court of Appeals held:

> Mr. Nave contends there was insufficient evidence to sustain his convictions. He argues the statements made by I.V. were inconsistent, and she could not identify him as her attacker. He further argues that his statement/confession to her while driving was not sufficient to convict him under principles of corpus delicti. We disagree.

> Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). When a defendant challenges the sufficiency of the evidence, he or she admits the truth of all of the State's evidence. *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010).

Mr. Nave first argues I.V.'s statements were inconsistent and that she could not have identified him as her abuser. He emphasizes that I.V. testified she never saw her abuser and the abuser never spoke to her.

Identity of the defendant is one of the elements all crimes share that must be proved beyond a reasonable doubt. *State v. Thomson*, 70 Wn. App. 200, 211, 852 P.2d 1104 (1993), aff'd, 123 Wn.2d 877, 872 P.2d 1097 (1994). Where testimony of identification is unclear or inconsistent, the uncertainty only goes to the testimony's weight, not its admissibility. *State v. Vaughn*, 101 Wn.2d 604, 610, 682 P.2d 878 (1984). Issues of witness credibility are matters exclusively reserved for the finder of fact and this court will not review them on appeal. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

Here, I.V. testified she always faced the wall when her abuser was touching her and her abuser never spoke to her. However, the jury had to weigh that fact against other facts supporting I.V.'s ability to identify Mr. Nave as her abuser. First, Mr. Nave had touched I.V. inappropriately while she slept before. Second, the touching was sexual and ongoing multiple times per week for several weeks. Mr. Nave was the only male in the house, and he had unfettered access to I.V.'s basement bedroom. Not even Mr. Nave argued that I.V.'s abuser was one of her younger sisters or her mother, all of whom slept upstairs. Third, and most important, Mr. Nave admitted he had abused her on one occasion when he gave her various choices of whether to report the abuse or not. Based on these facts, the jury was given the opportunity to weigh I.V.'s credibility and decided her identification of Mr. Nave and her accusations against him were credible. We will not disturb the jury's credibility findings.

Mr. Nave also argues that his admission to I.V. is insufficient to convict him under the principles of corpus delicti. The State argues that Mr. Nave did not properly assign error to this issue. We use our discretion to review the issue because it is simpler to refute Mr. Nave's argument than to explain whether the argument is reviewable under RAP 2.5(a).

Corpus delicti principles protect a defendant from being convicted through false confessions by requiring the State to show evidence of the "body of the crime." *State v. Aten*, 130 Wn.2d 640, 655-57, 927 P.2d 210 (1996). Corpus delicti involves two elements: (1) an injury or loss (2) caused

by someone's criminal act. *State v. Cardenas-Flores*, 189 Wn.2d 243, 263, 401 P.3d 19 (2017).

> Here, I.V. testified she was sexually assaulted over a period of several weeks by a person entering her room at night while she slept. This was sufficient evidence of injury caused by someone's criminal act. [footnote omitted]

> We conclude the State presented sufficient evidence for a reasonable trier of fact to find beyond a reasonable doubt that Mr. Nave was the person who sexually abused I.V. in the spring of 2017.

ECF No. 8-1, Ex. 2 at 30-32.

The state court reasonably rejected the challenge to the sufficiency of the evidence because the evidence, viewed in the light most favorable to the prosecution, proved Nave's guilt beyond a reasonable doubt.  This allegation is denied.

### Claim 3:  Allowing Evidence of Flight

Petitioner claims the trial judge improperly admitted "flight" evidence.  ECF No. 1 at 8.  As to this issue, Petitioner cites to no "clearly established Federal law, as determined by the Supreme Court of the United States" that would prohibit this evidence.  See 28 U.S.C. § 2254(d)(1).  Even if the claims rested upon clearly established federal law, Petitioner does not show the state court adjudication of the claims was contrary to or an unreasonable application of such law.  Here, the state court reasoned:

Mr. Nave next argues the prejudicial effect of evidence of flight substantially outweighed its probative value. But ER 403 does not preclude prejudicial evidence, not even unduly prejudicial evidence. Instead, ER 403 precludes "unfair[ly]" prejudicial evidence. Mr. Nave does not explain why evidence of flight was unfairly prejudicial. To the extent his unfair prejudice argument is tied to his assertion he traveled to New York because he was told to leave his house, we are unpersuaded. Mr. Nave left his house as instructed and went to his mother's house. He never explained why he took the additional steps of quitting his job, selling his car, and traveling across the country. Here, there was a reasonable and substantial inference that Mr. Nave did these things as an impulsive reaction to evade arrest and prosecution.

We conclude the trial court did not abuse its discretion by allowing evidence of Mr. Nave's flight—quitting his job, selling his car, and traveling to New York.

ECF No. 8-1, Ex. 2 at 35.

This claim is denied.

**Claim 4:  Allowing Prior Bad Act Evidence**

Petitioner contends the trial court abused its discretion by allowing "prior bad act" evidence.  ECF No. 1 at 10.  Again, Petitioner cites to no "clearly established Federal law, as determined by the Supreme Court of the United States" that would prohibit this evidence.  See 28 U.S.C. § 2254(d)(1).  While Petitioner presented this claim to the Washington Supreme Court on direct appeal as a matter of state law, he did not present this as a federal claim.

A claim must be "fully and fairly" presented to the state's highest court so as to give the state courts a fair opportunity to apply federal law to the facts.

1   *Anderson v. Harless*, 459 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270, 276-78

2   (1971).  Each claim must be presented to the state's highest court based upon the

3   same federal legal theory and the same factual basis as the claim is subsequently

4   asserted in federal court.  *Hudson v. Rushen*, 686 F.2d 826, 829-30 (9th Cir. 1982).

5      Therefore, this claim is denied as Petitioner did not properly exhaust his

6   remedies.

7      **Claim 5:  Exclusion of Defense Evidence**

8      Petitioner contends the trial court excluded crucial evidence as to "the

9   origins of the fabricated allegations" and "the mind set of the accuser."  ECF No. 1

10   at 18.

11      Criminal defendants have the right to present a defense and confront

12   witnesses.  *Pointer v. Texas*, 380 U.S. 400, 403 (1965); *California v. Green*, 399

13   U.S. 149, 158 (1970); *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973) ("Of

14   course, the right to confront and to cross-examine is not absolute and may, in

15   appropriate cases, bow to accommodate other legitimate interests in the criminal

16   trial process.").  However, the right is far from absolute, and not every evidentiary

17   ruling to exclude defense evidence infringes upon the right.  *Montana v. Egelhoff*,

18   518 U.S. 37, 41-42 (1996).   "The accused does not have an unfettered right to

19   offer [evidence] that is incompetent, privileged, or otherwise inadmissible under

20   standard rules of evidence."  *Id*. at 42 (quoting *Taylor v. Illinois*, 484 U.S. 400, 410

(1988)).  Relevant evidence may, for example, be excluded on account of a

defendant's failure to comply with procedural requirements.  *Id.* (citing *Michigan*

*v. Lucas*, 500 U.S. 145, 151 (1991)).  And any number of familiar and

unquestionably constitutional evidentiary rules also authorize the exclusion of

relevant evidence.  *Id.* at 42.

Here, the state court determined that the trial judge did not err:

> Mr. Nave contends the trial court abused its discretion by excluding
> evidence that I.V.'s cousin reported she was sexually abused at about the
> same time I.V. reported that she had been sexually abused. He argues the
> evidence was highly probative because it explained why I.V. contrived her
> allegations when she did. The State responds that the trial court did not
> preclude the evidence. Rather, it required a clearer offer of proof. We agree.

> Prior to trial, the State filed a motion to preclude evidence that I.V.'s
> cousin was sexually abused. Mr. Nave responded that I.V.'s mother knew
> that I.V. had heard about her cousin, but that her mother was uncertain when
> I.V. had heard about it. The trial court decided that Mr. Nave's description
> of the evidence was too nebulous. The court excluded the evidence, subject
> to Mr. Nave establishing a nexus between I.V.'s and her cousin's
> allegations. The court told Mr. Nave he could raise the issue again prior to
> cross- examining I.V.

> But Mr. Nave did not raise the issue again. He failed to make a
> specific offer of proof of what I.V. knew and when she knew it.

> In *State v. Burnam*, 4 Wn. App. 2d 368, 421 P.3d 977, *review denied*,
> 192 Wn.2d 1003 (2018), we emphasized the importance of a specific offer
> of proof. We said an offer of proof should (1) inform the trial court of the
> legal theory under which the offered evidence is admissible, (2) inform the
> trial court of the specific nature of the offered evidence so the court can
> judge its admissibility, and (3) create an adequate record for appellate
> review. *Id*. at 377. An offer of proof must not be so vague as to require the
> trial court to speculate about the nature of the evidence. *Id*

ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS ~ 20

1    Here, the trial court tentatively excluded the evidence because Mr.
2    Nave's offer of proof was nebulous. Mr. Nave did not explain how I.V.'s
     mother knew she had heard of her cousin's sexual abuse or when she had
3    heard about it. The mother's testimony might be excluded on the basis of
     hearsay. Also, I.V. might testify that she did not know her cousin had made
4    a similar allegation or that she heard about the allegation after she had told
     her mother that Mr. Nave raped her. Either way, the trial court justifiably
5    required Mr. Nave to raise the issue again once he could make a proper
     connection between I.V.'s and her cousin's allegations.

6    Mr. Nave additionally argues the trial court's ruling deprived him of
7    his due process right to present a defense. We disagree. The trial court
     allowed Mr. Nave to develop the necessary connection between I.V.'s and
8    her cousin's allegations outside the presence of the jury and suggested it
     could be done prior to I.V.'s cross- examination. Mr. Nave did not do this.

9    Because Mr. Nave's offer of proof was not sufficiently specific, we
     conclude the trial court did not abuse its discretion by excluding it until Mr.
10   Nave could make a sufficient offer of proof.

11   ECF No. 8-1, Ex. 2, at 37-39.

12   The trial court reasonably determined that Petitioner never made a proper

13   offer of proof to support the admission of the proposed evidence.  After the judge

14   determined the preliminary offer did not lay a proper foundation for the proposed

15   evidence, Petitioner did not follow up on the matter or develop a proper

16   foundation.  The judge did not err in excluding the evidence based upon the faulty

17   offer of proof.  The state court adjudication of this claim was not unreasonable.

18   This claim is denied.

19   //

20   //

ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS ~ 21

### Claim 6:  Cross-Examination Beyond Scope of Direct

Petitioner claims that he was cross-examined beyond the issues he testified to on direct.  ECF No. 16 at 33.  He contends that the court allowed considerable latitude, the questions did not relate to topics covered in the direct examination, nor go to inform the jury as to the Petitioner's credibility or trustworthiness, instead, the Petitioner was painted as abandoning his family and thereby distracted the jury from its task of evaluating the relevant evidence.  *Id*.

Again, Petitioner cites to no "clearly established Federal law, as determined by the Supreme Court of the United States" that would prohibit this evidence.  See 28 U.S.C. § 2254(d)(1).  While Petitioner presented this claim to the Washington Supreme Court on direct appeal as a matter of state law, he did not present this as a federal claim.

A claim must be "fully and fairly" presented to the state's highest court so as to give the state courts a fair opportunity to apply federal law to the facts. *Anderson v. Harless*, 459 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270, 276-78 (1971).  Each claim must be presented to the state's highest court based upon the same federal legal theory and the same factual basis as the claim is subsequently asserted in federal court.  *Hudson v. Rushen*, 686 F.2d 826, 829-30 (9th Cir. 1982).

 Therefore, this claim is denied as Petitioner did not properly exhaust his remedies.

1    **Claim 7:  Unconstitutional Evidence on Appeal**

2        Petitioner claims the Washington Court of Appeals applied new evidence to

3    affirm his convictions.  ECF No. 1 at 19.  The Court of Appeals summarized

4    Petitioner's contention as follows:

5            Sixth, Mr. Nave contends the State introduced new, irrelevant, and
         unconstitutional evidence concerning gender on appeal in violation of RAP
6        9.11 and the Constitution; however, he offers no meaningful legal analysis
         of either authority and fails to show that there was a constitutional error or
7        that he was somehow prejudiced.

8            To summarize, Mr. Nave's petition presents only conclusory
         allegations, some of which were previously rejected on direct appeal, and no
9        arguable basis for relief in law or in fact.  The petition is, therefore,
         frivolous.

10

11    ECF No. 8-1, Ex. 18 at 388.

12        While Petitioner presented this claim to the Washington Supreme Court in

13    his personal restraint proceedings as a matter of state law, he did not present this as

14    a federal claim.  A claim must be "fully and fairly" presented to the state's highest

15    court so as to give the state courts a fair opportunity to apply federal law to the

16    facts.  *Anderson v. Harless*, 459 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270,

17    276-78 (1971).  Each claim must be presented to the state's highest court based

18    upon the same federal legal theory and the same factual basis as the claim is

19    subsequently asserted in federal court.  *Hudson v. Rushen*, 686 F.2d 826, 829-30

20    (9th Cir. 1982).

1    Therefore, this claim is denied as Petitioner did not properly exhaust his

2  remedies nor articulate any legal analysis.

3    **Claim 8:  Ineffective Assistance of Counsel**

4    A defendant in criminal proceedings has a constitutional right to effective

5  assistance of counsel.  U.S. Const. amend. VI.  A defendant asserting violation of

6  his constitutional right to effective assistance of counsel must demonstrate the

7  following:  (1) "that counsel's representation fell below an objective standard of

8  reasonableness," and (2) "that there exists a reasonable probability that, but for

9  counsel's unprofessional errors, the result of the proceeding would have been

10  different." *Kimmelman v. Morrison*, 477 U.S. 365, 374–75 (1986) (citing

11  *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)).  Regarding the first

12  prong, a "tactical decision about which competent lawyers might disagree" does

13  not qualify as objectively unreasonable.  *Bell v. Cone*, 535 U.S. 685, 702 (2002).

14  "Judicial scrutiny of counsel's performance must be highly deferential," and "a

15  court must indulge a strong presumption that counsel's conduct falls within the

16  wide range of reasonable professional assistance[.]"  *Strickland*, 466 U.S. at 689.

17  Additionally, habeas courts must be deferential not only to the decisions of defense

18  counsel, but also to the decisions of the state courts as required under 28 U.S.C.

19  § 2254(d)(1).  *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (doubly

20  deferential judicial review applies to a *Strickland* claim evaluated under the

§ 2254).  Moreover, the Supreme Court "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success."  *Id*.

Here, Petitioner contends that defense counsel was ineffective by failing to "acquire exculpatory evidence crucial to the primary defense" concerning the victim's cousin's allegations of sexual abuse and failed to "re-cross" petitioner "when the State presented a series of questions intending to indicate the Petitioner's travel as an admission of guilt."  ECF No. 1 at 20; ECF No. 16 at 40-41.

The Washington Court of Appeals reasonably rejected Petitioner's claim about his counsel's investigation:

> . . . Mr. Nave fails to produce evidence to support his speculative claims that the defense and prosecution failed to investigate his step-child's knowledge of her cousin's report of sex abuse, that the fruit of such an investigation would have resulted in exculpatory evidence, and that the State knowingly presented false or misleading evidence and failed to correct the record concerning that evidence. Again, his contentions are based on merely conclusory allegations that an investigation did not occur and that he made no admission to his step-child.

ECF No. 8-1, Ex. 18 at 387-88.

The Washington Court of Appeals reasonably rejected Petitioner's claim that his counsel did not rehabilitate his testimony on redirect:

> Mr. Nave first contends trial counsel was ineffective for failing to rehabilitate him on redirect after the State cross-examined him about his

ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS ~ 25

1
2
3

travels to New York and for failing to present to the jury an explanation alternative to guilt to explain his travels. Mr. Nave's ineffective assistance of counsel claim appears to be an attempt to improperly recast his unsuccessful challenge on direct appeal to the admission of evidence of his travels to New York.

4   ECF No. 8-1, Ex. 18 at 386.  Because the flight evidence was admissible, no

5   ineffective assistance of counsel has been shown.

6        Other than broad assertions and conclusions, he has not shown that there is

7   any reasonable probability that, but for counsel's unprofessional errors, the result

8   of the proceeding would have been different.

9        This claim is denied.

10   **Claim 9:  Charged by Information, Not Indictment**

11        This Court previously denied Petitioner's very same argument on this issue.

12   Case number 2:19-CV-0155-TOR, U.S.D.C. E.D. of WA.  The United States

13   Supreme Court stated long ago: "Prosecution by information instead of by

14   indictment is provided for by the laws of Washington.  This is not a violation of the

15   Federal Constitution."  *See Gaines v. State of Washington*, 277 U.S. 81, 86 (1928).

16   Consequently, Petitioner's assertions to the contrary are legally frivolous.

17   **Claim 10:  *Brady* Violations**

18        Petitioner contends that the State's investigator and prosecutor suppressed

19   exculpatory evidence from the defense in violation of *Brady v. Maryland*.  ECF

20   No. 1 at 22.  In his Traverse, Petitioner contends the investigation detective

1  "learned of a leading line of questioning originating from Crime Check and I.V.'s

2  mother before the detectives recorded interview." ECF No. 16 at 45. Petitioner

3  contends this information was "false tainted information". *Id*. Petitioner then

4  contends crucial impeachment evidence of the cousin's contemporaneous

5  disclosure, the motive for false accusations, was suppressed. *Id*. at 46.

6  "A *Brady* violation occurs when the government fails to disclose evidence

7  materially favorable to the accused." *Youngblood v. W. Viriginia*, 547 U.S. 867,

8  869 (2006) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). A court should

9  find that evidence is material "only if there is a reasonable probability that, had the

10  evidence been disclosed to the defense, the result of the proceeding would have

11  been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "A reasonable

12  probability is a probability sufficient to undermine confidence in the outcome." *Id*.

13  (internal quotation marks omitted). "To state a claim under *Brady*, the plaintiff

14  must allege that (1) the withheld evidence was favorable either because it was

15  exculpatory or could be used to impeach, (2) the evidence was suppressed by the

16  government, and (3) the nondisclosure prejudiced the plaintiff." *Smith v. Almada*,

17  640 F.3d 931, 939 (9th Cir. 2011) (citation omitted). A *Brady* violation does not

18  exist in a case in which the allegedly suppressed evidence is known by the defense.

19  *See United States v. Dupuy*, 760 F.2d 1492, 1501 n.5 (9th Cir. 1985) ("Since

20  suppression by the Government is a necessary element of a *Brady* claim, if the

means of obtaining the exculpatory evidence has been provided to the defense, the

*Brady* claim fails.") (citations omitted).

Here, the Washington Court of Appeals reasonably rejected the claims

because Petitioner failed to show the prosecution withheld materially exculpatory

evidence:

> Mr. Nave contends the State committed multiple *Brady* violations by suppressing the evidence that I.V.'s cousin disclosed a sexual assault against her and by allowing I.V. to perjure herself with inconsistent statements. Mr. Nave misconstrues what a *Brady* violation is.
>
> A *Brady* violation requires proof of three elements: "[(1)] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [(2)] that evidence must have been suppressed by the State, either willfully or inadvertently; and [(3)] prejudice must have ensued." *State v. Mullen*, 171 Wn.2d 881, 895, 259 P.3d 158 (2011) (alterations in original) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999)). When viewing the second element, the key factor is that the State must be in possession of evidence that it does not turn over to the defense and that evidence must have been unobtainable to the defense through its own investigation. *Id.* at 895-96.
>
> Mr. Nave complains the State committed a *Brady* violation when it successfully prevented him from inquiring about I.V.'s cousin's allegation against a family member and when a detective suggested to I.V. that Mr. Nave had oral contact with her. Neither of these complaints involve the State failing to turn over evidence to Mr. Nave. Mr. Nave was aware of the evidence, sought to have the cousin's allegation admitted, and asked questions at trial about the detective's purported improper suggestion.

ECF No. 8-1, Ex. 2, at 45-46.

Petitioner frames his claims as a *Brady* violations, but he knew of the

allegedly exculpatory evidence, and attempted to admit the evidence at trial.  The

trial judge excluded the evidence because Petitioner did not lay a proper foundation prior to trial and did not raise the issue later during trial.  This Court finds the state court's conclusions were neither an unreasonable determination of the facts nor an unreasonable application of the clearly established constitutional law as set forth by *Brady*.  This claim is denied.

### Claim 11:   Cumulative Error

Petitioner claims that cumulative error warrants relief.  ECF No. 1 at 22.  However, Petitioner did not cite to federal law or otherwise specifically present this claim to the Washington Supreme Court as a federal claim.  Petitioner cited state law in presenting this claim to the state court.  ECF No. 8-1, Ex. 11 at 315.

A claim must be "fully and fairly" presented to the state's highest court so as to give the state courts a fair opportunity to apply federal law to the facts.  *Anderson v. Harless*, 459 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270, 276-78 (1971).  Each claim must be presented to the state's highest court based upon the same federal legal theory and the same factual basis as the claim is subsequently asserted in federal court.  *Hudson v. Rushen*, 686 F.2d 826, 829-30 (9th Cir. 1982).

 Therefore, this claim is denied as Petitioner did not properly exhaust his remedies.  Moreover, Petitioner is not entitled to relief because he has not shown the existence an any single constitutional error nor multiple errors that could cumulate to cause prejudice.  This claim is denied.

1    **IV.    Conclusion**

2        Based on the foregoing, this Court finds that the state court's rejection of

3    Petitioner's claims was neither contrary to nor involved an unreasonable

4    application of clearly established constitutional law as determined by the United

5    States Supreme Court, nor an unreasonable determination of the facts in light of

6    the evidence that was presented in the state court proceeding.  Thus, habeas relief

7    is not warranted on these claims.

8    **V.    Certificate of Appealability**

9        A petitioner seeking post-conviction relief under section 2254 may appeal a

10   district court's dismissal of his federal habeas petition only after obtaining a

11   certificate of appealability (COA) from a district or circuit judge.  A COA may

12   issue only where a petitioner has made "a substantial showing of the denial of a

13   constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  A petitioner satisfies this

14   standard "by demonstrating that jurists of reason could disagree with the district

15   court's resolution of his constitutional claims or that jurists could conclude the

16   issues presented are adequate to deserve encouragement to proceed further."

17   *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

18       This Court concludes that Petitioner is not entitled to a COA because he has

19   not demonstrated that jurists of reason could disagree with this Court's resolution

20

of his constitutional claims or could conclude that any issue presented deserves encouragement to proceed further.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) is **DENIED**.

2. Any appeal taken by Petitioner of this matter would not be taken in good faith as he fails to make a substantial showing of the denial of a constitutional right. **Accordingly, a certificate of appealability is denied.**

3. Petitioner's Motion to Strike and Motion for Summary Judgment (ECF Nos. 14 and 15) are **denied as moot**.

The District Court Executive is directed to enter this Order and Judgment accordingly, furnish copies to the parties, and **CLOSE** the file.

**DATED** November 10, 2022.



THOMAS O. RICE
United States District Judge